JUSTICE TRIEWEILER
dissenting:
I dissent from the majority opinion.
It is first necessary to point out that the majority adopts as true allegations in the appellant’s brief which are not supported by the record.
For example, the majority opinion states that the original property settlement agreement provided for income to the wife from property owned by the parties. Paragraph III of the original settlement agreement, however, actually pertains to the property that was conveyed to the children during the marriage. It provided that after the mortgages were paid off on those properties in 1984 and 1985 the net income would be paid to the wife for life.
However, before those mortgages were ever paid, the wife, while represented by an attorney, proposed an amendment to Paragraph III which substituted the $300 per month maintenance payment which was the subject of this petition for modification.
The majority opinion states:
“Had the court allowed inquiry into the original property settlement agreement and the 1984 modification, it would have observed that the 1984 modification gave Dixie maintenance for life in lieu of property from which she was to receive income. Here the maintenance provision of the agreement replaced a property settlement and the agreement was quasi-maintenance and quasi-property... . Here Dixie gave up the right to property in exchange for maintenance *22 and the District Court erred in not allowing inquiry into the parties’ original property settlement agreementand in modifying maintenance payments without considering necessary information.”
The original property settlement agreement did not give Dixie property from which she was to receive income. It simply provided that at some future date she would receive income from property owned by her children after her husband paid off the mortgage. There is no record regarding the amount of net income that was to be expected. The 1984 amendment simply substituted one form of maintenance payment ($300 per month) for a different form of maintenance payment (an unspecified amount of net income). At the time of the 1984 amendment Dixie was represented by counsel. In fact, it was her counsel who proposed the form of the 1984 amendment. It is assumed that the amendment was in her best interest and she understood all the legal implications of maintenance payments.
One of the legal implications of receiving maintenance is that pursuant to 40-4-208(2)(b), MCA:
“Whenever the decree proposed for modification contains provisions relating to maintenance or support, modification under subsection (1) may only be made:
“(i) upon a showing of changed circumstances so substantial and continuing as to unconscionable ... .”
In this case, the District Judge, after listening to testimony from Luke and Dixie, and after receiving documentary evidence regarding their financial circumstances, found as a fact:
“11. That there has been a showing of changed conditions as required by MCA 40-4-208 so substantial and continuing as to make the terms of the Property Settlement Agreement incorporated in the decree now unconscionable.”
The majority has set aside that findings of fact. However, pursuant to Rule 52(a), M.R.Civ.P., “[findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.”
After reviewing the transcript of Luke’s and Dixie’s testimony, I conclude that the District Court’s finding of a change in circumstances which made the prior maintenance payments unconscionable was not clearly erroneous.
Subsequent to the time that the parties entered into the maintenance agreement, Dixie qualified for social security benefits in an amount equal to that amount being paid for maintenance. Therefore, her income increased.
*23 On the other hand, Luke’s health and financial condition both deteriorated dramatically.
From 1987 until 1989 Luke’s annual income declined steadily from $72,000 to $42,000. The evidence was that in the first half of 1990 his income had declined even further due to health problems which included a serious heart condition, colitis, an ulcer, shoulder surgery, and impending surgery on his neck. It was anticipated that his income would decline even further based on his retirement at the age of 65 on October 7, 1990. After that time his primary income was to be from social security benefits and from the public employees retirement system at $870 and $570 per month respectively.
In addition, Luke owed the federal government $129,000 for taxes, and had to borrow money from a financial institution in order to make payments on that debt. At the time of trial, he had a debt over and above his tax debt in the amount of $80,000. His monthly expenses were $3,535, and his estimated monthly income from all sources was $2,382.
Dixie’s living expenses, including food, shelter, electricity, and utilities were provided for at the home where she resided. The cost of residing at the home was paid by her son in exchange for office space provided to him by his father. The fact that these expenses were provided enabled Dixie to live within the amounts received as social security and workers’ compensation benefits. Although the proportion is uncertain, the evidence was that any additional amounts paid to her by Luke would simply increase the amount charged for her living expenses at the home where she resided.
This is not a case of the District Court rewriting a contract to provide for something beyond the original terms of the agreement. Neither is this a case where the court failed to give proper consideration to the earlier distribution of property.
This is simply a case of the parties substituting one form of maintenance payment for an earlier more uncertain form of payment and a modification of that obligation, based on a change in circumstances. There was absolutely no property given up by Dixie in exchange for the amended maintenance provision, and there was no reason to consider circumstances prior to the 1984 amendment in the District Court’s determination of whether circumstances had changed since that amendment.
For these reasons, I would affirm the judgement of the District Court.